No. 20;101.

G. F. CORWIN and SCOTT WOLF, *Appellees*, v. ZELLA SPENCER, *Appellant*.

SYLLABUS BY THE COURT.

REAL-ESTATE AGENT—*Fraud—Instructions—Commissions*. In an action by Corwin and Wolf to recover commission for effecting the exchange of real property for the defendant, Spencer, where the evidence tended to show that Tate, acting for Corwin and Wolf, secretly agreed to pool commissions with Moseley, the agent of Noah Mortimer, the other party to the exchange, and that Spencer was thereby defrauded of a part of the real property owned by her, it was error to instruct the jury that any secret arrangement between Tate and Moseley with reference to pooling commissions would not be binding on Corwin and Wolf nor defeat their right to recover commission for making the exchange.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed April 8, 1916. Reversed.

*J. E. Alexander, S. T. Jocelyn,* and *John W. Adams,* all of Wichita, for the appellant.

*George McGill, Charles B. Hudson, Clyde M. Hudson,* and *John W. Blood,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is an action to recover commission for the sale of real estate. The plaintiffs recovered judgment. The defendant appeals.

The defendant owned one hundred lots in Wichita. Noah Mortimer owned a section of land in Texas. The defendant appointed the plaintiffs her agents to exchange her one hundred lots for the section of land in Texas. Mortimer appointed J. W. Moseley his agent to exchange the Texas land for lots in Wichita.

From March, 1913, to July 12, 1913, G. F. Corwin, one of the plaintiffs, worked for N. O. Tate, a real-estate agent, of Wichita, on a salary. July 12, 1913, Corwin succeeded to the real-estate business of Tate, and on July 17 formed a partnership with Scott Wolf, the other plaintiff. After G. F. Corwin succeeded to the business Tate was much in the office of the plaintiffs, and when the plaintiffs were out would transact business for them. The defendant's first negotiation for the exchange of her property for the Texas land was had with Tate before the plaintiff succeeded to his business. After this Tate continued to conduct the negotiations, and on the 20th of August, 1913, procured a contract to be signed by the defendant with J. W. Moseley providing for the exchange of these properties. The plaintiffs were to receive $250 as their commission for making this exchange. Tate directed the defendant to execute a deed for seventy of the lots to Mortimer and thirty of them to Moseley. The evidence tended to show that the thirty lots were to be divided beween agents Tate and Moseley. The plaintiffs had no knowledge of this arrangement.

The defendant complains of certain instructions given by the court and of the refusal of the court to give instructions requested by her. The court instructed the jury, in part, as follows:

"No. 5. You are further instructed that any secret agreement between one N. O. Tate and one Moseley with reference to pooling com-

missions would not be binding on plaintiffs nor defeat their recovery in this action.

"No. 8. You are further instructed that if you find the owner of the Texas land offered and was willing to accept seventy lots from the defendant for this land, and that the plaintiffs knew of this fact directly or by one Tate, and concealed said fact from the defendant, and induced the defendant to exchange 100 lots for the Texas land when the same could have been exchanged for seventy lots, then you are instructed that such action on the part of the plaintiffs would be tantamount to bad faith and would be fraud upon the defendant and they would forfeit their claim to compensation for any services rendered in the transaction."

Instruction No. 8 correctly states the law. The defendant argues that the fifth instruction was erroneous. It is not a correct statement of the law as applied to the evidence in this case. It is positive and direct in its terms, and being erroneous, is entirely misleading. If N. O. Tate had secret arrangements with the other agents concerning the commissions to be paid by the defendant for the exchange of the land, the plaintiffs are bound by the consequences flowing from that agreement, because N. O. Tate was acting for them. By his action he defrauded the defendant out of thirty of her lots. The plaintiffs can not reap the benefit of that fraud and say they knew nothing about it and claim that they are not bound by the conduct of their agent in perpetrating the fraud. (2 C. J. 849; Note, 1 L. R. A. 144.)

Complaint is made of the refusal of the court to continue the cause at the close of the trial on the application of the defendant. On account of the conclusion reached on the other branch of the case, this matter becomes immaterial.

Because of the error in the instructions, the judgment is reversed and a new trial is directed.